h well  well free well was afraid whenever you're ready here well well well well practiced group methods called district is the resident distillation of raw soybean oil cities the necessary an unavoidable residual of the production of edible that's well it is not produced in its own right this case record of international trade the improper activist on uh... with respect with respect to our first alternate classification thirty eight oh seven special pitch the other part of it is placing improper emphasis on examples of use uh... in determining the common commercial meaning of the term vegetable pitch what we have is an air nominee their classification it's clear and not even put into the evidence that this was this substance was commonly known as vegetable pitch right uh... the evidence we put in consisted of dictionary definitions and encyclopedias which describe what vegetable pitch is but there's no suggestion that there's no reference to this substance being vegetable pitch we were unable to put in any evidence that that showed uh... commercial use of that name for this product only what the definitions are meets and bounds of what vegetable pitch is and uh... uh... significant amount of evidence showing that this product meets that definition uh... because we have an air nominee tariff classification uh... which again is clear and not limited by use the the court does that definition fall within the common commercial meaning of vegetable pitch uh... it purposes of HTSUS thirty eight oh seven uh... your honor we believe we believe it does the encyclopedia botanica the chemical uh... encyclopedia all define vegetable pitch as the residue of the distillation of fatty oils or uh... or fats whether they be animal vegetable or mineral oils or fats uh... and that is in fact what this product is distillation residue from the uh... raw oil raw soybean oil. Are you making that directly or is it part of a byproduct type of a situation? it's it's a residue your honor it's it's the unavoidable residue it is made waste it is waste which is uh... the third of our arguments. So why aren't you arguing that it is a residual product? uh... that is uh... that is one of the alternative claims that we've made and we plan to argue today unfortunately there are at least three possibly four uh... provisions that prime fish describe the product so we feel to be... No you don't like that argument you don't like the argument that Judge Rader just mentioned uh... with respect to a residual product? Yeah. I do in fact like that argument your honor the problem is... You seem to be running away from it uh... I am not and I can make that argument uh... the residual product argument is uh... again the problem that occurred below is that the court of international trade reached to the explanatory notes to find uh... limitations in an extremely clear and unlimited uh... provision it's a basket provision. Why is that an error on the part of the lower court to do that? Well as this court has said repeatedly in Clarendon Marketing, in Airflow Technologies, and I think most recently in Michael Simon's Design where the tariff language is clear there's no reason to go to legislative history or to extraneous extraneous matters including the explanatory notes and in this case... If the language of the particular classification is unambiguous though isn't it? If it is unambiguous and in this case uh... we uh... uh... assert that it is in fact unambiguous. It's residual products of the chemical or allied industries not elsewhere specified or included. It is in fact a basket provision despite Judge Walsh's decision uh... which is intended to cover a large number of articles which result from the uh... which are the residue of various chemical processes. There's nothing about... It tends to define the rest of the members of that class as waste. That is correct. Everything else is harmful products. This is a pretty beneficial one. It only has become beneficial since it has been discovered that it contains tocopherols and sterols. Previously it was a nuisance and it was difficult to get rid of. It was burned or fed to cattle. uh... and it is because it's an oily resinous substance it can't just be dumped. uh... so uh... it's a it's a complicated disposal problem for... Previously it was a complicated disposal problem uh... however subsequently it's been determined to have have downstream value. uh... Is that the reason why it would not go into 3825 then? uh... No. Whether it has value or not uh... we believe is irrelevant to the question. uh... A number of cases as far back as 1927, the Masson case that we discussed uh... discussed the fact that whether a product is in that case waste is uh... not controlled by its value. In this case what would result would be as the as the uh... market value for DOD changed based on the value of vitamin E uh... for which there's sort of a spot market uh... the classification would potentially change. uh... and that that can't be the result from the classification. My question is if we're looking for the most specific way to classify this it might be under a subheading of 3824, the mixtures containing five percent or more by weight of aromatic or aromatic substances. That might be the best specific. The question is can we go directly to that bypassing the headings themselves? No, your honor, the court can't do that. The court's been clear that with respect to applying the relative specificity test start with the headings which prima facie describe the products. Uh... apply relative specificity at the heading level and only once the heading has been determined proceed to the lower levels. We think that 3824 can't get passed. But isn't this a somewhat unusual circumstance where the subheading is more the subheading of a different heading is the best specific designation of this product even though it falls under the wrong heading? If you understand what I'm saying. No, I understand what you're saying but I don't know your honor whether there are other examples of where that's occurred but I do know that the legal rule is relative specificity is applied at the heading level. Well the legal rule, I'm wondering if this is the instance when that rule doesn't apply because the general rule of specificity is more important than the order in which you apply that rule. So we're applying if we're looking for the most specific we get to the subheading rather than the order of applying it which is progressively downward. Right, but to do that again I understand the question but again to do that you would have to first find that other products of the chemical or allied industries is more specific than residual products of the chemical or allied industries. Congress for its own reasons decided that residual products should be separated out individually. That's the question is why do I have to make that finding? Why can't I apply the general rule of specificity as the important principle here without regard to the using the headings ahead of the subheadings? I believe you're... Because I'm hypothetically agreeing with you that the heading of residual is more specific than the heading of chemical products. Understood. I will say I honestly didn't anticipate this question. I believe that would violate GRI 1 which addresses the attention first to the headings. Does the government make this specificity? Not with respect to the lower level subheading item. As a procedure is to go to the heading first making sure that you fit within the heading and then go to the subheading. That is correct. Because otherwise you'd have a number of subheadings that would even be more applicable than the heading. Not only in this case but in other cases. Right. I believe that that is true. Unfortunately with respect to Judge Rader's question I can't think of examples where that would be the case. With respect to the residual product heading the fundamental problem in the CIT decision is that the court found it to be limited by the language in the explanatory notes which listed at the time four, subsequently five products and therefore the court found it not to be a basket provision which again we think is completely inconsistent with the very clear language of the provision which includes the language not elsewhere specified or included and is placed as the last heading in the section, the traditional place to place a basket provision. So again under Airflow and Michael Simon's designs the explanatory notes are inconsistent and therefore in this case you get no weight and the court in fact gave them a tremendous amount of weight in limiting and doing what Clarendon calls surgery upon the tariff schedule. The alternative classifications with respect to this product are as I mentioned earlier vegetable pitch which we believe is also a specific description of the merchandise and finally as waste. With respect to the waste argument we assert that DOD fits within the definition of waste and that again the court of international trade here... Don't you have another problem with the vegetable pitch argument and that is that the other things in that heading wood tar, rosins and so so on are a little farther afoot? I'm not 100% certain what you mean by farther afoot. Well I'm suggesting that even if vegetable pitch describes your product and nobody seems to think so in the trade you certainly can't show any relationship to wood tar and wood tar oils and wood creosote and so forth. Well we can show a similarity in use of products. There's an article in the appendix with respect to the use of tall oils and tall oil pitch for the recovery of phytosterols which is a product which is also extracted from DOD. So in reality tall oil pitch and vegetable pitch in our case DOD have similar uses and I believe that to find that by limiting the applications of pitch to the uses in the explanatory notes the court effectively excluded tall oil pitch from 3807 even though it's expressly listed in the explanatory notes. And it requires further manufacturing before you get to those uses right? In both cases tall oil pitch and in DOD. They both require extensive remanufacturing or reprocessing. Would you like to save the remainder of your rebuttal time? I would. And we'll hear from Ms. Lieber. Good morning. May it please the court. I gather from the pitch questions from each of you that are very clear on our arguments. This merchandise. Your problem is with the residual products of the chemical oil line industry which really seems to pretty clearly include this problem. It's a situation. I don't see it as a problem because what you have to remember is this case is unique in that the residual products language of 3825 used to be in the same provision. And because of that to the extent that you find that they can't overlap. They cannot overlap. A lot of overlapping. Exactly. But not that it used to be part of the same provision. Why not? Because there are three separate clauses in form of 3824. Why can't the clauses overlap? In a single heading they can't. What says that? The language, all the case law that says you can't render any of the terms superfluous in a heading. Well that doesn't make them superfluous, that they're overlapping. What case says they can't overlap? They can't. To find that blank two terms in the same tariff provision overlap is to render one of the terms superfluous. You don't need two terms. Then we have a lot of superfluous terms in the statute because there are a lot of overlapping terms. In fact, the notes recognize that, right? Not within the same heading that I know of. I can't think of an example. In separate headings there are lots of overlap. That is correct. That's why you have GRI 2 and GRI 3. If you can have overlap in separate headings, why can't you have overlap in the same heading? Because of the unique history of the residual products language of 3825. Now remember, in this case you are only dealing with Chapter 38. You're dealing with three possible claims within that chapter. Chapter 38 has a symmetry to it, as do, frankly, all of the tariff chapters. But with Chapter 38, if you take a look at it, it goes from which, by the way, covers miscellaneous chemical products and preparations. Chapter 38 goes from specifically identified chemical products and preparations in the first few headings. In the middle they have more generally described products and preparations. To the end, where you have the most generally described products and preparations. The way to preserve this symmetry, especially because both 3824 and 3825 refer to products that are not otherwise specified or included. The only way to preserve this symmetry is to look backwards from a heading to see if it's specified or included in an earlier provision. 3825 is the quintessential basket provision of last resort. It's the very last heading in both Chapter 38 and in HTSUS Section 6. And the reason you know it's the... But isn't a residue a more specific designation of a byproduct? No. Not necessarily. And we would even dispute that this is a quote residue. It is manipulated to optimize the constituent materials. You call it a residue in your brief. No, we don't call it a residue. We say it's residual. It's left out. It's unavoidable. I don't think we actually do. And if we do, that's a mistake. And I apologize for it. But it's manipulated. It is not simply you distill soybean oil and this is what you get. This is purposefully manipulated to optimize its constituent materials. It's prepared. It is a preparation. It's prepared in the course of distilling the soybeans and the soybean oil to get the product that ADM will buy. And in fact, if you look... It wasn't always like that. It was a residual product that at one time was considered waste. Well, as... Until they found a new use for it. As Mr. Freeman conceded today, they discovered it's useful. And what was once... As the case law says, what's once thrown out can be useful and not a waste. This is not a waste. And now they essentially make sure that the process does maximize that type of residual product. It does. And Judge Geisler, the point is the fact that they didn't know these constituent materials were in there meant they weren't optimizing them at that point. But the fact that they burned it as fuel or fed it to animals doesn't make that useless. It makes... They're different uses. Well, wait a second. That can't be the test. That's ridiculous. The whole purpose of having a waste classification is this... The thing is useful and is going to be imported and is going to be potentially subject to a tariff or not subject to a tariff. If the whole... If waste required to be useless, things that are useless aren't imported. If it's useless for the original purpose without remanufacture, there's... Well, this is useless for the original purpose. Isn't that useful? Useless. It's useless as soybean oil. No, but it's totally useful as deodorizer distillate. It's a commercial product unto itself. You don't... You can have a byproduct that's very useful and not waste just because it's not... It doesn't serve the purpose of the product with which it's manufactured. It wouldn't be imported if it weren't useful, would it be? If somebody would have a use for it, but this has nothing to do with soybean oil. This has to do with deodorizer distillate, which is a commercial product unto itself. And ADM even indicates that... I forget where exactly in their brief it is, but ADM imports optimized deodorizer distillate. While ADM may also process soybean oil, when the market isn't appropriate, they don't maximize the tocopherols in their own soybean oil, but we're talking about the stuff they import, the maximized, optimized product that is specifically prepared to ADM specifications. This is not just a residual product. This is not a waste. This is actually a chemical preparation. It's a chemical product. There's no dispute that it's of the chemical industries. Mr. Wood, I have a question which really bothered me from the first time I picked up the briefs. There's language originally, the residual products of the chemical or allied industries, which would... The product would fall under that particular phrase. Now, that phrase was moved to another subheading. Why wouldn't the product also move to that subheading when that phrase was moved? It's also completely encompassed by chemical products of the allied industries. And even in the first, heading 3824, the residual products language was still the basket provision of last resort. If you find, as did the trial court, that this merchandise is covered by 3824, in order to preserve the symmetry of the chapter, you end your analysis. You don't have to go any further. The 3825, you only get to under GRI 1. Because this is still a GRI 1 case, heading versus heading. And they're both not specified or elsewhere included. This merchandise, there's no dispute. It is encompassed by the language of 3824. So it's included there. You don't look to 3825. Even though the language that originally included that particular product... It was still... Was still in 3824 originally, and doesn't shift over to 3825. Correct. And because the language that moved into 3825 is really the dumping ground for everything that's not included in any place else as a chemical product or preparation. How could it be that 3824 is not broader than 3825? You're not doing a relative specificity analysis. It's a GRI... No, no. Answer my question. Is 3824 broader than 3825? No. Why not? I'm sorry. Yes, it is. And it's meant to encompass a lot more products. As you can tell from, first off, the explanatory notes, 3824 is intended to encompass a lot of products. That doesn't mean that it describes this product more particularly, or that you even get to an analysis under 3825. You don't need to. And in fact, as the trial court found... Why, in terms of relative specificity, don't we look to 3825, which is more specific than 3824? Because this is not a basic residual product. This is a manipulated product. It's not simply... You're basically... Your argument is not that 3825... You seem to agree that 3825 is more specific. You're saying this isn't within 3824. No, I'm saying a few things. First off, it's our position, based on the fact that these products... Excuse me, this language came from the same heading, that you never reach a relative specificity argument. But I understand that you may have a different opinion than I do. 3825 is not more specific. It's more limited. It's intended to be more limited, as you can tell from the explanatory notes. And as the trial court correctly found, there's only a limited number of products that are supposed to go into this basket provision. Because of the environmental restriction? No, because it's the basket provision of last resort. If it's included anywhere else in a chemical products provision, it's not... You don't even look to 3825. You have two provisions that both say, not otherwise specified or included. And in fact, you have a few others within Chapter 38 also. The only way to make sense of these is to look backwards to an earlier chemical provision to see if it's captured or specified or included within an earlier provision. By the time you get to the absolute last chemical provision, only the limited number of products that haven't already been captured would be classified in there. And that makes perfect sense when you look at the explanatory notes that only at this point have a handful of exemplars. You're saying that because 3824 is a subset of 3825 doesn't mean that it's more specific? I'm not saying 3824 is a subset of 3825. I mean, I'm sorry, that 3825 is a subset of 3824. Former 3824. What about the current? They're not subsets of each other. They don't encompass the same product, so they're not subsets of each other. How could it be that these products aren't within 3824? I thought you were arguing they were. They are. It's a chemical preparation. It's a chemical product. So if they're also within 3825, why isn't 3825 more specific? Because you're not getting to a relative specificity analysis. You don't need to. But you're asking us to go with definitions of what this is, a preparation as opposed to a residual product. But don't both parties and the CIT concede that this is a residue? And what's the difference between a residue and a residual product? It is not simply a residue. It's a manipulated byproduct. In other words, you would define a residue as something which is not manipulated in any way. Right. It's simply the leftover. But this doesn't say that. It says it's a residual product. And a product tends to suggest that it might have been produced, therefore altered in some way. Agreed. So why isn't this in 3825? Again, for the legal analysis, it was not because you don't reach 3825. Because you fall into the first basket, not the second basket. And you don't like to call the second one a basket. I understand. I don't mind calling it a basket. The second one, 3825, is the basket provision. It's a basket provision of last resort for chemical products. But you say it falls in the first basket. It does. It is included absolutely as a chemical product and a chemical preparation. Why is it the first basket? Why isn't... Which basket do we choose? Because you go in order. You go in the order of appearance for the tariff provisions. And in fact, Your Honor, when you indicated that the mixtures subheading is more specific, I agree with Mr. Friedman that you don't jump to subheadings right away. However, the fact that these mixtures, which does describe this product, is in there, is another indication that that's... Belongs in that one, you're saying. Correct. That it is included there, even if not specified. Is this almost like a cascade fountain where the central portion catches most of it, like Chapter 38, and then you go down the cascade and you end up at the bottom and the bottom catches everything that's left over? Well, that's what basket provisions generally do. But if you look to pretty much any chapter in the tariff, I know the Bowen case, the court talked about the wood chapter provisions, where you go from raw materials up through manufactured goods. The tariff chapters have a reason for why they're drafted in the order that they are. And for this particular chapter, Chapter 38, it goes from the more specific to the... I'm sorry, the more specifically identified products up through the most generally described products. And you always have to look back to see if the product is included someplace else, unless it's expressly excluded. You started off your argument on the basis that there's some beautiful symmetry to all of this. Yes. I'm still looking for it. And the symmetry really is rather odd in many respects. As you well know, HCSUS really is not a symmetrical type of an analysis, is it? It makes sense to use a cascade type of analogy? It does if you're looking only at provisions within the same chapter. And particularly here where you're asking to determine between competing provisions that both say not elsewhere specified or included. The court has previously recognized that certain tariff provisions, they should preserve the symmetry of the tariff provisions. I know Judge Prost wrote an opinion in E.T. Horne where she recognized the preservation of symmetry of tariff statutes to matter. And that is a way to... when you have two provisions that say not elsewhere specified or included, it's a very logical and accurate way of determining if a product is included elsewhere. What case says that where you have two basket provisions and one is more specific than the other one, you look to the first basket provision rather than to the more specific one? I don't have a case that says that, but that's not what we're arguing here. What we're arguing here is you never reach relative specificity. You don't have to go to GRI 3 under the circumstances of this particular case. This is a unique case. Because what's unique about it? Because the language used to all be in the same provision. And you can't determine that 3825 encompasses the same products as 3824 without saying that some of the language that used to be in 3824 was unnecessary. Okay, thank you. Ms. Rubin? I don't know if you wanted to hear anything about waste, but it's in our brief. Okay, thank you. Thank you very much. Mr. Friedman? You have three minutes remaining. Thank you. I just have a few short, sort of disconnected points. The basic argument the government seems to be making is that the movement of these products from 3824 to 3825 has an impact on relative specificity in the application of GRI 1 and GRI 3. There is nothing about amending the tariff language which would suggest that the normal rules of interpretation or statutory construction should be changed or that the general rules of interpretation should be changed. Relative specificity applies. The basis for the argument the government's making seems to be that because they were in the same heading, they cannot have overlap. Well, we know, for instance, that in 3825 today, both municipal waste and sewage sludge are present and separately enumerated. I would posit that both of those have some overlap. You wouldn't call your product sewage sludge or waste? Not sewage or sludge and not municipal waste. We would call it waste from the industrial process. Finally, with respect to this argument that the product is somehow optimized, the government's now calling it optimized deodorizer distillate. That's irrelevant. It's a canard, frankly. The Maywood case, which talks about the recovery of cocoa butter residue to recover theobromine, which had some medicinal value. In that case, the merchandise was declared by the predecessor court to be waste, and it was clear that there were two processes available for the making of cocoa butter. The one was selected to maximize the theobromine in the waste product. So that fact doesn't change. The fact that ADM or Cargill or any other company can modify their process to get some more value out of the waste stream doesn't mean it's not waste for tariff purposes. That's exactly what the Masson case as far back as 1927 warned the court against doing. Ms. Rubin says this isn't a specificity case at all. Right. Why isn't she right? There's no reason to avoid looking at... Actually, the court's required to look at the language of the two headings and make an independent decision as to whether the product is prima facie classifiable in any one of the three headings that's implied. And once making that determination, the rules have been clear and consistently applied that you start with the headings and the way to decide whether it's 3824 and then continue down, 3825 is relative specificity. There's no need in this case to depart from that long established rule. She also says we don't get to 25 because we capture you at 24 and you go in order. Yeah. Again, Your Honor, that can't be the case. If it were, for example, you could stop at 3807 and you would not have to look and see whether there was a more specific place to find it later in the tariff schedule. And as the court warned, I believe in Midwest of Cannon Falls, the tariff classification cannot depend on which direction you review the tariff schedule. Thank you. All right. Thank you, Mr. Cooper.